Provided To _C.F.R.C._

On _4-4-2024_

For mailing, by _Sm_

# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF FLORIDA

## CIVIL RIGHTS COMPLAINT FORM FOR
## PRO SE PRISONER LITIGANTS IN ACTIONS UNDER
## 28 U.S.C. § 1331 or § 1346 or 42 U.S.C. § 1983

_Melvin Bernard Thompson_,

Inmate ID Number: _959252_,

*(Write your full name and inmate ID number.)*

**v.**

_Centurion OF Florida, LLC_,

_Jason Thomas Brenes-Catinchi_,

_Jaqueline Smith_,

*(Write the full name of each Defendant who is being sued. If the names of all the Defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names. Do not include addresses here.)*

" VERIFIED COMPLAINT "

**Case No.:** _4:24-CV-165-AW/MAF_
*(To be filled in by the Clerk's Office)*

**Jury Trial Requested?**
☑ **YES**  ☐ **NO**

FILED USDC FLND TL
APR 8 '24 PM 3:57

# I. PARTIES TO THIS COMPLAINT

### A. Plaintiff

Plaintiff's Name: <u>Melvin Bernard Thompson</u>   ID Number: <u>959252</u>

List all other names by which you have been known: <u>Melvin B. Thompson,</u>

<u>Melvin Thompson, Chase Thompson.</u>

Current Institution: <u>Central Florida Reception Center</u>

Address: <u>7000 H.C. Kelley Road</u>

<u>Orlando, Florida 32831</u>

### B. Defendant(s)

State the name of the Defendant, whether an individual, government agency, organization, or corporation. For individual Defendants, identify the person's official position or job title, and mailing address. Indicate the capacity in which the Defendant is being sued. Do this for *each and every* Defendant:

1. Defendant's Name: <u>Centurion of Florida LLC.</u>

   Official Position: <u>Private Healthcare Provider For Fla. Dept. Of Corrections</u>

   Employed at: <u>Florida Department of Corrections</u>

   Mailing Address: <u>1200 South Pine Island Rd.</u>

   <u>Plantation Florida 33324</u>

   ☑ Sued in Individual Capacity     ☑ Sued in Official Capacity

2. Defendant's Name: Jason Thomas Brenes-Catinchi

   Official Position: Medical Doctor: Regional Medical Director-[Centurion Administrative]

   Employed at: Centurion of Florida LLC

   Mailing Address: 1203 Governor Square, Ste. 600

   Tallahassee, Florida 32301

   ☑ Sued in Individual Capacity          ☑ Sued in Official Capacity

3. Defendant's Name: Jaqueline Smith

   Official Position: Medical Technician - Philbotamist

   Employed at: Centurion of Florida LLC

   Mailing Address: 1203 Governor Square, Ste. 600

   Tallahassee, Florida 32301

   ☑ Sued in Individual Capacity          ☐ Sued in Official Capacity

*(Provide this information for all additional Defendants in this case by attaching additional pages, as needed.)*

## II. BASIS FOR JURISDICTION UNDER 28 U.S.C. § 1331 or § 1346

Under 42 U.S.C. § 1983, you may sue state or local officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution" and federal law. Under *Bivens v. Six Unknown Named Agents of Federal Bureau of Narcotics*, 403 U.S. 388 (1971), you may sue federal officials for the violation of certain constitutional rights.

Are you bringing suit against (*check all that apply*):

□ Federal Officials (*Bivens case*)       ☑ State/Local Officials (*§ 1983 case*)

## III. PRISONER STATUS

Indicate your confined status:

□ Pretrial Detainee                       □ Civilly Committed Detainee

☑ Convicted State Prisoner                □ Convicted Federal Prisoner

□ Immigration Detainee                    □ Other (*explain below*):

_____

_____

## IV. STATEMENT OF FACTS

Provide a short and plain statement of the ***facts*** showing why you are entitled to relief. Describe how ***each*** Defendant was involved and what each Defendant did, or did not do, in support of your claim. Identify when and where the events took place, and state how each Defendant caused you harm or violated federal law. Write each statement in short, numbered paragraphs, limited as far as practicable to a single event or incident. ***Do not make legal arguments, quote cases, cite statutes, or reference a memorandum.*** You may make copies of page 6 if necessary to supply all the facts. Barring extraordinary circumstances, no more than five (5) additional pages should be attached. Exhibits attached to

the complaint will count as part of your page limitation. Therefore, do not attach irrelevant or unnecessary exhibits. Facts not related to this same incident or issue must be addressed in a separate civil rights complaint.

## Preliminary Background / Synopsis

A. Plaintiff is a prisoner of the Florida Department of Correction "FDOC," serving a life sentence at the time of the "events" he was housed at Central Florida Reception Center's "CFRC," in Region 3, Main and South Units.

B. Plaintiff has been diagnosed by FDOC Physicians and Specialist with Osteo-Chondritis - Avascular Necrosis "OsteoNecrosis" in his left and Right "L-R" Knees; Tendonitis in his L-R Shoulders; Tenosynovitis in his L-R hands-fingers: (here-in-after these "combined" diagnosis will be termed: "Medical Conditions"): and Plaintiff was also diagnosed with Shingles, and Post Herpetic Neuralgia "PHN," FDOC had also designated Plaintiff as Mobility and Hearing Impaired under (not limited to) the ADA-RA Acts.

C. Plaintiff "had" recieved Pain Managment Treatment, and Therapies to treat his medical conditions at NorthWest Florida Reception Center "NWFRC" in Region 1, and Subsequently Reception and Medical Center "RMC" in Region 2, for his Medical Conditions, and[+] PHN. However the above defendants refused to provide Plaintiff any - effective pain managment treatment for his medical conditions[*] from 2020-2021 as punishment upon infor-

+: until unconstitutional cost saving policies to deny prescribing Gabapentin was implemented in Region 2 as discussed infra by Centurion Medical Administrators

*: based on "mere pretext" medical reasons that changed when Plaintiff would achieve the "mere pretext" reason's goal; inter alia, used to cover up acts of reprisal.

**Statement of Facts Continued** (*Page____of_____*)

mation and belief due to Plaintiff writing grievances against CFRC medical staff, and outright denied access to a Clinician for 12 days after Plaintiff contracted the shingles virus, as punishment upon information and belief due to Plaintiff writing grievances against CFRC medical staff, **and**, refused to provide Plaintiff with any effective medication to lessen the pains associated with **PHN**, in **Region 3**, CFRC, per policy.[++] **from 2020 - present 2024.**[++]

**D.** Medical records substantiate that upon information and belief, over **14** +/- medical: doctors, administrators; Regional Directors; specialist, and Clinicians in **Region 1, 2, and 3** "all" in one way or another clinically determined that due to Plaintiffs medical: conditions, and history (and diagnosis, of Shingles and PHN) he would require treatment with steroid injections (or steroid pills), and surgery to treat his medical conditions, to lessen the pains (and treatment with Gabapentin which is the: first line medication medically indicated to treat **PHN**, upon information and belief)[1] to treat his PHN pains.

Thus this was "**NOT**" Plaintiffs desire for a different or perferred mode of treatment, but a need **for** " continuous mode of effective treatment and pain management" that had proven to be effective, and prescribed by Physicians to treat PHN.[1]

---

1. Gabapentin (generic for Neurontin) is the National acceptable medical standard of treatment prescribed by Physician's nation wide to treat PHN, neuropathic pains; and Neurontin was approved by the FDA in 2002 to treat PHN neuropathic pains; a rare painful disease.

++: and retaliation, and deliberate indifference, and/or custom or practice (including denying Plaintiff access to dental for around 21 days, as discussed infra.)

Statement OF Facts Continued:

1. Provider Christine Bottkle D.NP, determined, along with Physical Therapist N. Sanders, Doctor of Physical Therapy "P.T." that NSAIDs, and Over-the-Counter "OTC", medications were ineffective for Plaintiffs medical conditions,● Dr. Bottkle arranged for Plaintiff to be transferred to FDOC's: "Intensive Care" facility: "CFRC" for more intensive treatment. Dr. Sanders D.P.T., recommended Plaintiff be seen by Orthopedic, as P.T. was also not resolving Plaintiffs medical conditions, pains, etc.●

2. Upon arrival at CFRC, Plaintiff was advised by inmates he knew from other facilities, and inmates at CFRC to not write grievances at CFRC or he would be retaliated against by medical and security staff. **This occurred in February 2020.**

3. Plaintiffs medical conditions began to cause pain, and discomfort, and he was hindered in his ability to obtain timely access to a Clinician, and effective pain management due to CFRCs medical Department "Dept." policies, and interference by defendant Smith, so plaintiff filed several grievances on these issues, and the initial grievance of retaliation on Smith was never responded to or returned, and defendant Brenes-Catinchi denied all other grievances.² This occurred between April-June 2020. - Jan. -Feb. 2021, etc.

<u>Defendant Jason Thomas Brenes-Catinchi</u>

4. Subsequently Plaintiff was seen by defendant Brenes-Catinchi (who was at the time CFRC's Site Medical Director). The first question defendant Brenes-Catinchi asked Plaintiff was: "why are you filing these grievances?...etc. Plaintiff explained he was trying to get healthcare and he was not recieving it, and he was in pain, explaining the pain and his medical conditions, and prior treatments. This occurred around July 8, 2020;

5. Defendant Brenes-Catinchi "would <u>not</u>" provide Plaintiff "<u>any</u>" pain medication during the appointment,* despite having access to a host of pain medications in a pharmacy room 10-20 feet away, but told Plaintiff he would prescribe a NSAID, and Plaintiff would recieve it in a few days and told Plaintiff to continue to take OTC medications.

●: and prescribed steriod injection Trigger Point Therapy, that lessened Plaintiffs pains...

2: except a request to review plaintiffs medical records, but defendant Brenes-Catinchi would subsequently go on to deny around 25-50 +/- grievances even those against himself upon information and belief and to the best of Plaintiffs knowledge.

7.

Statement of Facts continued :

Plaintiff advised defendant Brenes-Catinchi that OTC and NSAIDs had proven to be ineffective in lessening the pain of his medical conditions,° and defendant Brenes-Catinchi told Plaintiff (among other things) to keep taking the OTC meds anyway, until he recieved the NSAIDs; despite Dr. Brenes having immediate access to a host of pain meds 10 to 20 ft away.

6. Days later Plaintiff recieved the NSAIDs and took them, but they did not provide pain relief to Plaintiffs Trigger Fingers, or Shoulders, and only minimal relief to his knees. Plaintiff informed defendant Brenes-Catinchi of this fact, and advised he was still suffering in pain. Defendant Brenes-Catinchi told Plaintiff (among other things)* that he would provide him a shot of steriods in his shoulder that hurt the worst, and asked Plaintiff which shoulder hurt the worst? Plaintiff said his R-shoulder, and defendant Brenes-Catinchi told Plaintiff he would take an X-ray first, and in "2 weeks" he would give him a steriod shot, and there was nothing that could be done for the trigger-fingers as he dont do small joints. No pain medication was provided this day, either; around August 26/28, 2020, despite Plaintiff literally pleading for pain relief; defendant Brenes-Catinchi let plaintiff suffer in pain anyway, providing no° help at all.

7. The X-ray was done and around 9-2-2020 defendant Brenes-Catinchi reviewed the X-rays, and still refused to call Plaintiff to recieve the steriod shots, trigger point pain management therapy.

8. This same routine continued from September 2020 through Jan. 20,21. Plaintiff continued to suffer in extreme-acute pain, and his medical condition worsened. Plaintiff requested to be seen by an Orthopedic Specialist that visited his institution but defendant Brenes-Catinchi as the **Site** Medical Director would not approve it, but enstead would only approve failed: therapies and medications, causing Plaintiff pain physically and emotionally.

<u>Defendant Jaqueline Smith</u>

9. During this same time period, and in relation to Plaintiffs untreated medical conditions, defendant Smith became angry at Plaintiff because based upon her own words:" man [Plaintiff] you wrote grievances on me..." upon information and belief for plaintiff writing grievances on defendant Smith and CFRC medical Dept., she began a campaign of: denying access to sickcall; to be seen by a provider to provide treatment in a timely manner; for medical emergencies plaintiff filed on September 2nd, and 9th 2020, telling Nurse Connell: to not process protocol forms, because defendant Brenes-Catinchi was not going to do anything for Plaintiffs trigger fingers."

8.

°°: to see how much space was there for the Trigger Point sterial injection

Statement OF Facts Continued:

10. Intentionally interfering with a Physician's Order, by ordering the wrong size ADA medical shoes for plaintiff, refused to provide medical supplies to plaintiff that a physician had wrote medical pass for plaintiff to recieve; and refusal to assign Impaired Inmate Assistant per FDOC ADA policies, inter alia... the ADA-RA Act, including the ADA Settlement Agreement between FDOC, and Disability Rights Florida, et al. [tried to infect Plaintiff w/ strepth]

11. Around December 27th through 29th 2020, Plaintiff was under extreme duress; and stress (mentally) from the physical pain he was enduring from defendant Brenes-Catinchis not providing pain management (and directing his Providers to not provide pain management to plaintiff) for his untreated medical conditions, which (upon information and belief) caused an onset of the Shingles virus on Plaintiffs Stomach. (Plaintiff could not sleep for approx 28-30 hrs. due to pain from untreated medical conditions).

12. Defendant Smith who "controlled" the scheduling of Provider visits for inmates and who collects sickcalls from the sickcall drop box, collected Plaintiffs sickcall about the Shingles, but did not immediately schedule Plaintiff for sickcall;

12(a). However on 1-4-21 while Plaintiff was at insulin at 5 am, Defendant Smith along with another registered Nurse viewed Plaintiffs stomach and Smith said that Plaintiff does not have the shingles, but instead diagnosed Plaintiff with the "Cruds", and Smith who was unliscended to practice medicine, went to a shelf and chosed OTC medications: foot fungus; and Barrier Cream etc., to treat the "Cruds", according to her diagnosis.

13. Defendant Smith's treatment did not lessen the symptoms, or pain and Plaintiff advised Smith of this fact and asked to see a Provider, but Smith would not schedule Plaintiff to see a Provider for a total of around 12 days, while Plaintiff sat in agony as the Shingles virus ate 2 holes in Plaintiffs upper layer of skin on his Stomach;

13(a). The pain was so bad, Plaintiff wound up using a bite cloth to bite down on and upon information and belief weakened and subsequently his eye-tooth broke from his gum tearing gum tissue, and bleeding, and again Smith would not schedule Plaintiff to be seen by Dental for around 21 days. Plaintiffs Sister had to contact Centurion's Regional Director (and defendant Brenes-Catinchi about Smith's conduct) to get Plaintiff to a Dentist. The Dental Director of Region 3, and his Regional Coordinator, visited Plaintiff at CFRC to examine his mouth and personally scheduled him for dental care the next day or two.

[Alternatively: Defendant Brenes is also responsible for defendant Smith acts, as he was aware and failed to stop the constitutional violation]. This occurred between December 2020 - January 2021 ... etc.

9.

Statement OF Facts continued:

(Paragraphs 14, 16-33) Centurion of Florida LLC - Brenes-Catinchi Unconstitutional Polices:

14. Plaintiff was finally seen by a Clinician and provided a antiviral medication, but no pain medication was provided to treat neuropathic pains, because according to the Clinicians:" Centurions Administrators had a policy against providing Gabapentin[1] in Region 3," and those administrators were the Medical Director Brenes-Catinchi, and the Regional Medical Director,[3] based upon non-medical reasons. Plaintiff did request other medicines he knew that treated shingles pain but according to Centurions Administrators, these medications[4] were not on the Formulary list, and would not be paid for.[8] Plaintiff also recieved a medical pass for wound care for open wounds left by the untreated virus, that severly damaged his nerves on his stomach to date causing the PHN, from 2021-present writing of this Complaint. This occurred around mid January 2021.

Example of Constitutional Medical Treatment By Dr. Asif Kahn et.al, At RMC: 2021-7-6-2022:[+]

15. Subsequently Plaintiff was transferred to RMC in February 2021. At RMC Plaintiff was seen by a DR. Asif Kahn,[5] who after examining Plaintiffs medical conditions, prescribed a host of effective pain medications, and a Consultation to Orthopedic Specialist for his medical condition. DR. Kahn also prescribed Gabapentin[1] to treat Plaintiffs PHN pains.[6] For almost one year plaintiff remained at RMC recieving treatment, and was transferred back to CFRC in February 2022, with active prescription for Gabapentin.[6]"

16. Upon Plaintiffs return to CFRC, Defendant Brenes-Catinchi, had been promoted to Region Three's Medical Director, and DR. Asif Kahn, had been recently transferred from RMC, to CFRC. Various Clinicians advised Plaintiff that defendant Brenes-Catinchi has a policy against prescribing Gabapentin in this region, and CFRC does not have the funding to provide medical care like RMC does to treat inmates.

17. As a result, when the valid prescription that was written at RMC and sent to Plaintiff at CFRC was almost expired, Plaintiff submitted a sickcall for

---

3: Centurion Cowrporate Office Cost saving policies, upon information and belief
4: Capsain, Dolorne, No Pain, HP, Pain Doctor, Pain X, Zostrix, Zostrix HP, and Plaintiff offered to cover cost
5: Also an employee of Centurion of Florida LLC
6: Approved by Centurion of Florida LLC's Chief Health Officer, and Medical Director at RMC Nalini Anandjiwala, and Raman Bass, For Physician diagnosed PHN.[+]

10.

Statement of Facts Continued:

renewal of the Gabapentin as it was the only medicine he knew that was treating his PHN pains[1], that he had been prescribed and used," to this point.

18. However due to the blanket policy to deny inmates[7] Gabapentin to treat inmates nerro-pathic pains, Plaintiff prescription for Gabapentin was allowed to abruptly stop causing plaintiff adverse side effects including but not limited to more severe pain from the PHN,..., ect. Despite Plaintiff submitting a sickcall "weeks before" to prevent an abrupt stopping of the Gabapentin, to prevent adverse side effects.

19. Based on this policy Plaintiff recieved "NO" alternative treatment for his PHN pains from April 26, 2022 upto around June 5, 2022. Dr. Kahn examined Plaintiff, and understood the pain plaintiff was in, directed Sarah Sanchez to escalate Plaintiff's June 3 (or 5) 2022, Sick call to defendant Brenes-Catinchi, to approve Gabapentin to treat Plaintiff's PHN - despite knowing Brenes-Catinchi's policy against said request. Cf. para. 15 supra, fn. 6

19(a). And on or around June 6-9, 2022 Plaintiff recieved 2 doses of Gabapentin 300 mg tablets, and defendant Brenes-Catinchi had it abruptly stopped saying: " Gabapentin does not treat Neuropathic pains (except Post-Herpetic Neuralgia)[1] and its a non-formulary medi-cation[8], try another medicine." (paraphrased) No other medicine was on the formulary to treat Plaintiff's PHN, and once again Plaintiff was left to suffer unnecessary wanton infliction of pain, due to non-medical reasons, based on cost concerns, and retaliation.

20. Plaintiff was transferred back to RMC on June 14, 2022, and put in sickcall for inter alia, renewal of Gabapentin. He was seen by Provider LeVeen[5], and she told plaintiff (inter alia) that, "due to cost concerns" Gabapentin was not being prescribed by Cen-turion any more."[+] Plaintiff grieved this "cost concern" issue (inter alia) and approx-imately 2 months recieved Gabapentin at a lesser dosage to treat his PHN which was ineffective. (Cf. paragraph 29 infra). Plaintiff consented to take Cymbalta around 8-1-22, but it was not prescribed at that time.

7. Plaintiff has declarations from two other inmates that were denied Gabapentin in Re-gion III by defendant Brenes-Catinchi and his Predessessor, under this unconstitutional policy that will be introduced at Summary Judgment if this Complaint survives that far.

8. All formulary medications are paid for by the State of Florida, all non-formulary medica- 11.
tions are paid for out of Centurion's Profits, upon information and belief.

Statement OF Facts Continued:

21. On September 19, 2022, Plaintiff was transferred back to CFRC with an active prescription of Gabapentin. However all staff was now afraid-even help o.B. to assist Plaintiff with obtaining his prescribed Gabapentin,[9] despite Plaintiff, asking help from; "Pill window nurse," and insulin nurse, Plaintiff was told among other things defendant Brenes-Catinchi will not approve for you to have Gabapentin, and no-one (based on policy) would provide plaintiff with prescribed medicine: Gabapentin, from September 19, 2022 - September 23, 2022 at CFRC-Main.

22. Plaintiff was subsequently transferred to CFRC-South Unit Intensive treatment facility where he told a Nurse about the active Gabapentin prescription on September 23, 2022; and immediately the Nurse called State Pharmacy to send the Gabapentin to CFRC-South unit because it was already approved and prescribed in Region 2 at RMC.[Thus this would not violate defendant Brenes-Catinchi's: policy - custom, or practice]

23. In the interim, sometime between September 23, 2022, and October 4, 2022 some unknown individual had put a stop (clicked a red circle on the medication page on the computer) on Plaintiff from getting the prescribed Gabapentin; a Clinician showed this to plaintiff and said Dr. Brenes is not going to approve you getting Gabapentin[10] Finally on October 5, 2022 Plaintiff recieved the already approved and prescribed Gabapentin from RMC, prescribed on 8-22-2022, approximately.

24. Prior to this prescription expiring Plaintiff (interalia) submitted a sickcall for Gabapentin renewal, and was seen by Provider Kelly-Carr, and she told him Dr. Brenes-Catinchi denied her DER for Gabapentin Renewal; [based on the same reasons he gave in paragraph 19 supra, see footnote: 8]. Plaintiff's Gabapentin prescription was allowed to expire abruptly... again in November 2022, and no alternative effective medication to treat Plaintiffs PHN was provided.[11]

_____

9: i.e: medical staff at CFRC Main Unit, plaintiff submitted Grievance, and Appeal.

10: Plaintiff filed more grievances against Defendant Brenes-Catinchi

11. Provider Kelly-Carr, advised Plaintiff that she "did not know of any other medication that was on the formulary" [8 supra] to treat his PHN, and she was baffled by the contradictory denial from Dr. Brenes...," and could not prescribe any alternative medicine to treat his PHN, and could only offer OTC (ineffective in PHN treatment) Ibuprofen due defendant(s) Brenes-Catinchi, and Centurion of Florida's LLC's policy; and/or custom; pattern or practice.

12.

Statement OF Facts Continued:

25. On March 8, 2023 (following a ADA Van accident that caused Plaintiff to be thrown out of his unsecured wheelchair during transport to dentist for further Dental work on the broken eye tooth from 2021) Plaintiff was in Telehealth Zoom meeting with a Neurologist's Physician's assistant, for Cervical Radiculpathy inter alia, and Plaintiff mentioned that he was still having PHN pains, and the Physician's Assistant advised Plaintiff she was prescribing Gabapentin to treat the PHN, and other Neuropathic pains.

26. Immediately Nurse Beverly Smith who was facilitating the meeting at CFRC, told the Physician's Assistant that; "CFRC dont give Gabapentin, he cant have that here... (inter alia)...it wont be approved." The conversation between the two turned to insurance; cost; etc, but the Physician's Assistant repeatedly prescribed/recommened Gabapentin, despite what policies CFRC has[1] and said: "CFRC can work it out..." Nurse Smith asked for a Second choice medicine to be prescribed, and gave her suggestion: Lamotregene because she (Smith) take it herself. The P.A. also recommended Lamotrigine, but stressed: "Gabapentin;" "Gabapen-tin" "Gabapentin" is what I recommend...[1]", or something to that effect. [Plaintiff did Grieve Preservation of the Telehealth Zoom Meeting as evidence]

27. Approximately one week or so later, Provider Kelly-Carr advises Plaintiff the Gabapen-tin was denied by the New Centurion Regional Medical Director,[12] and Lamotrigine was approved. "Plaintiff readily consented" to take Lamotrigine and did for 30+/- days until:

28. The Lamotrigine was discontinued by Provider Kelly-Carr due to adverse side effects [▲infra] and it did nothing to lessen the PHN pains. ▲: (heart palpitation, cant concentrate, tremors in body, unable to fully sleep, inter alia..)[13]

29. Provider Kelly-Carr, around April 15, 2023, reluctantly "resubmitted" the Gabapentin DER as recommended by the Neurologist's Physician's Assistant, and on-

12: ...following the wide spread, long standing unconstitutional policies of her predecessors, but under "mere pretext" denying it as a drug diversion, when Plaintiff was not ever found abusing, or hoarding Gabapentin and was willing to take other medications to treat his PHN. Plaintiff was not addicted to Gabapentin.

13: From November (mid-latter) 2022, Plaintiff had No effective PHN pain medication, till April 17, 2022.

13.

Statement OF Facts continued:

April 17, 2023 Plaintiff was transferred to RMC, and the Neurologist's Gabapentin recomm-endation was Approved by RMC Regional Medical Director within an hour of plaintiff's arrival. Plaintiff's Family had prior contacted a State Representative about RMC's refusal to prescribe Gabapentin to treat his PHN (see paragraph 20 supra). Subsequently around (10) ten months later:

30. On February 6, 2024, Dr. Irrizary-Ortiz, informed Plaintiff that his Gabapentin prexscription was being discontinued because Centurion no longer covers that medication. The Gabapentin upon plaintiff's request was tappered down from 300mg three times a day to 100mg two times a day for seven day, to prevent abruptly stopping it.

31. On this dosage Plaintiff begin to experience more intermittent; burning, deep aching, and sharp stabbing sensations at the site of the old wounds from the virus - PHN. At a February 22 (circa) 2024 callart with Provider Monica Segal for pains medications to treat his PHN (interalia pains), Provider Segall advised Plaintiff Centurion does not allow Providers to prescribe Gabapentin any longer, and asked Plaintiff to make a suggestion on what he thinks might help. Plaintiff asked if Lyrica, or Lidoderm patches were available, and Provider Segall told Plaintiff those medications were not on the Formulary.[8] Plaintiff asked about Cymbalta, and was told by Provider Segall she thinks she can get Cymbalta approved.[14]

32. Due to Centurions Cost saving unconstitutional policies that were implemented in Coveporate office upon information and belief, and being enforced by Defendant Brenes-Catinchi, etal, Plaintiff stills suffers unnecessarily from PHN pains; and treatment is readily available. This policy has been going on as far back upon information and belief; around 2014 to present per Chris Holton # 384901, and William Sweeting # 081135, possibly even further back than 2014.[11]

33. Plaintiff was transferred back to CFRC, on March 11, 2024, where he had filed over 50+/- Grievances and Appeals, plus multiple Complaints on CFRC Medical Staff, and defendant Brenes-Catinchi from 2020-2024, and Plaintiff has been treated as a nuisance rather than a Patient, and as evident above, based on non-medical reasons; retaliation for filing grievances, and cost concerns, Plaintiff will not be prescribed "any" effective medication to treat his PHN, and continues to be denied "any" medication to effectively lessen PHN pains, which he still suffers from intermittently on a daily basis, as of this filing of this Complaint.

[14]: The Cymbalta is effective with Plaintiffs osteo arthritis, and helping minimally with the Cervical Radiculopathy, and appears helping undiagnosed depression, but its not treating the PHN pains effectively
*i.e.: it lessens the osteo pains - not totally stopping it; Plaintiff still has pain with weight bearing, etc.

14.

## V. STATEMENT OF CLAIMS

State what rights under the Constitution, laws, or treaties of the United States have been violated. Be specific. If more than one claim is asserted, number each separate claim and relate it to the facts alleged in Section IV. If more than one Defendant is named, indicate which claim is presented against which Defendant.

**1.** Defendant Brenes-Catinchi violated Plaintiffs; 1st, 8th, and 14th U.S.C.A Rights as are reallaged and incorporated by reference to facts in Sec. IV, No. 2-33 supra, and Subsection C and D. at p.5-6 supra

**2.** Defendant Jacqueline Smith violated Plaintiffs 1st, 8th and 14th USCA Rights as are reallaged and incorporated by reference to facts in Sec. IV, No. 9-13(a) supra, and Sec. IV, Subsec. C, and No. d-3

**3.** Centurion of Florida, LLC, and Brenes-Catinchi violated Plaintiffs 8th and 14th USCA Rights as are Re-alleged and incorporated by reference to facts in Sec. IV, No. 14-33 supra

**4.** All Defendants violated Plaintiffs ADA Rights, and 504 Title I, II, and III, ADA Rehabilitation Acts, etc. that are applicable to facts, reallaged and incorporated by reference in Sec. IV, A-D, and No. 1-33 supra.

## VI. RELIEF REQUESTED

State briefly what relief you seek from the Court. Do not make legal arguments or cite to cases/ statutes. If requesting money damages *(either actual or punitive damages)*, include the amount sought and explain the basis for the claims.

**1.** Compensator Damages in the amount to be determined by evidence introduced at trial. 15-16

**2.** Punitive Damages to be determined by a Jury against each defendant. 15-16

**3.** Declaratory Judgement Plaintiffs Civil/ADA Right were violated, 15-16 and cost of litigation/Attorney fees 15-16

**4.** Preliminary/Prospective Injunctive Relief: Policy Change on how Inmates with PHN OR Neuropathic pains are prescribed medically indicated medicines, without cost concerns; and retaliation. Immediate treatment of Plaintiffs PHN, by Centurion LLC etc.

**15.** On the basis that their actions, and behavior subjected Plaintiff to cruel, unusual punishment and inhumane treatment, against each defendant.

**16.** No less than $200,000 Compensatory and $300,000 Punitive per defendant, and $1.00 Nominal damages.

## VII.  EXHAUSTION OF ADMINISTRATIVE REMEDIES

The Prison Litigation Reform Act ("PLRA") requires prisoners to exhaust all available administrative remedies (*grievance procedures*) before bringing a case. 42 U.S.C. § 1997e(a). **ATTENTION:** *If you did not exhaust available remedies prior to filing this case, this case may be dismissed.* If the case is dismissed for failure to exhaust or for any reason, you will still be required to pay the full filing fee and the dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Therefore, please consider whether you have fully exhausted your remedies before proceeding with this action.

## VIII.  PRIOR LITIGATION

*This section requires you to identify your prior litigation history. Be advised that failure to disclose all prior state and federal cases—including, but not limited to civil cases, habeas cases, and appeals—may result in the dismissal of this case. You should err on the side of caution if you are uncertain whether a case should be identified.*

**ATTENTION:** *The "three strikes rule" of the PLRA bars a prisoner from bringing a case without full payment of the filing fee at the time of case initiation if the prisoner has "on three or more prior occasions, while*

*incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).*

A. Have you had any case in federal court, including federal appellate court, dismissed as frivolous, as malicious, for failure to state a claim, or prior to service?

☑ YES    ☐ NO

If "Yes," identify the case number, date of dismissal, and court for each case:

1. Date: 10-2-2023 _____ Case #: 4:23 cv 00311 AW - MAF _____

   Court: U.S.Dct. N.D. Tallahassee Division _____

   Reason: Failure to fully disclose Prior Litigation History - "Prior to Service??" It was never served.

2. Date: 12-2008 _____ Case #: 5:06 cv 322 _____

   Court: USDct N.D. _____

   Reason: Dismissed without Prejudice _____

3. Date: 10-2018 _____ Case #: 18-10623H _____

   Court: USCA 11th Circuit _____

   Reason: Failure to make substantial showing of denial constitutional rights.

Additional Page to Page 18: Section VIII, Prior Litigation (A):

4.  12-2008                     Case No. 4:07 cv 407
    USDC ND
    Dismissed without Prejudice, failure to exhaust

5.  5-2015                      Case No. 4:15 cv 254
    USDC N.D.
    Denied Claims Lack Merit

### Attention Please

I list these cases "erring on the side of caution"...trying to fully comply and list all Prior Litigation history, in sec. A, B, and C. Please forgive me if I listed them wrong...

Plaintiff as a State Prisoner(s) does not have access to all his Prior Litigation history, as those documents were deemed Inactive legal documents, by FDOC's policy and had to be destroyed, as FDOC would not store inactive legal documents at CF&C South Unit for Plaintiff, and Property Sgt acting in accords with FDOC policy instructed Plaintiff to either mail the inactive documents home or trash them, and Plaintiff trashed them.

Plaintiff does not have access to the Internet; PACER.gov, or any Leon County Clerk's website. FDOC does not provide inmates with this access or technology to ascertain Prior Litigation, nor will the Law Library Supervisor, nor Classification Officer utilize their access" to PACER.gov, etc to provide Plaintiff with" all" prior litigation history information, as Plaintiff has asked and been denied by both.

Plaintiff has diligently searched a lexis nexis "data base"- closed of from internet service and obtained ever prior litigation thats on this data base, additionally, Plaintiff to Federal District Courts, and Appeal Court and State Appellate Courts for information on Prior litigation history, and what was provided, he has submitted in the Prior Litigation sections.

However in some sections the specific filing and dismissal dates, and Judge information was not provided, and could not be listed. Plaintiff has done everything in his power to fully disclose all Prior Litigation History. Plaintiff and a RMC law Clerk could not find certain Prior Litigation case numbers, etc, on the Prison's law Library lexis nexis data bases - search engine that does not have internet access. Plaintiff is __NOT__ "intentionally misrepresenting" Prior litigation history.

18.

*(If necessary, list additional cases on an attached page)*

B. Have you filed other lawsuits or appeals in **state or federal court** dealing

with the same facts or issue involved in this case? ~see: Ht info~

~Ht: (i.e.: the case below dealt with RMC doctors refusing to prescribe pain medication and~
☑ YES ☐ NO ~I think it was Gabapentin, and the case at bar is for failure to provide~
~pain medication. I cite this case erring on the side of caution, and trying~
~to comply with the forms instruction)~

If "Yes," identify the case number, parties, date filed, result *(if not still*

*pending)*, name of judge, and court for each case *(if more than one)*:

1. Case #: ___3:09 cv 01101___   Parties: ___Thompson v. Isra et al.,___

   Court: ___U.S.D.C. M.D.___   Judge: ___Monte C. Richardson___

   Date Filed: ___11-2009___ Dismissal Date *(if not pending)*: ___4-2010___

   Reason: ___Voluntarily Dismissed Without Prejudice___

2. Case #: _____ Parties: _____

   Court: _____ Judge: _____

   Date Filed: _____ Dismissal Date *(if not pending)*: _____

   Reason: _____
   *(If necessary, list additional cases on an attached page)*

C. Have you filed any other lawsuit, habeas corpus petition, or appeal in

   **state or federal court** either challenging your conviction or relating to

   the conditions of your confinement?.

   ☑ YES   ☐ NO

   If "Yes," identify all lawsuits, petitions and appeals:

1. Case #: _90,103_____ Parties: _Thompson v. State of Florida_____

   Court: _Florida Supreme Court_ Judge: ___Full Court_____

   Date Filed: _? 1997_ Dismissal Date (*if not pending*): _? 1997_____

   Reason: _Denied, Cert. Review_____

2. Case #: _1D97-3831___ Parties: _Thompson v. State of Florida____

   Court: _First DCA_____ Judge: _Browning, Allen, Benton___

   Date Filed: _? 2000___ Dismissal Date (*if not pending*): _?2000____

   Reason: _Per Curium Affirmed "PCA"_____

3. Case #: _SC00-1247___ Parties: _Thompson v. State of Florida___

   Court: _Florida Supreme Court_ Judge: _Wells, Shaw, Harden, Lewis, Quince_

   Date Filed: _Aug ? 2000_ Dismissal Date (*if not pending*): _12-2000___

   Reason: _Cert denied._____

4. Case #: _1D06-6719___ Parties: _Thompson v. State of Florida__

   Court: _First DCA_____ Judge: _Kahn, Lewis, Hawkes___

   Date Filed: _? 2006-07_ Dismissal Date (*if not pending*): _? 2007___

   Reason: _PCA_____

5. Case #: _1D06-0420___ Parties: _Thompson v. State of Florida__

   Court: _First DCA_____ Judge: _Hawkes, Thomas, Roberts__

   Date Filed: _? 2007-08_ Dismissal Date (*if not pending*): _? 2008___

   Reason: _Granted Cert. Remand for Resentencing from Fl.S.Ct.___

   \*\*: "?" represents, I dont know the exact month and day ... I dont have access to PACER.gov.
   or online internet access to Clerk of Courts. FDOC prohibits inmates access to internet.

6. Case #: _SCO-489_   Parties: _Thompson v. State of Florida_

   Court: _Florida Supreme Court_   Judge: _Wells, Lewis, Quince, Anstead, Pariente_

   Date Filed: _? 2007-2008_ Dismissal Date (*if not pending*): _8-28-2008_

   Reason: _Granted Resentencing Hearing - Granted Cert Review._

   **(*Attach additional pages as necessary to list all cases.*)**   see: additional pages attached.

## IX. CERTIFICATION

1. I declare, under penalty of perjury, that all of the information stated above and included on or with this form, including my litigation history, is true and correct. Also see VERIFICATION 28 USC §1746 infra p.24 infra

2. Additionally, as required by Federal Rule of Civil Procedure 11, I certify that to the best of my knowledge, information, and belief, this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a non- frivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

Additional Page to p. 22: Section VIII, Prior Litigation (C):

**7.** CASE No.: 4:07cv407

USDCt ND

9-?-2007

Thompson v. McNeil

Judge William Stafford

12 ? 2008 - Without Prejudice

**8.** CASE No.: 1D07-4887

First DCA

?-?-2007

Thompson v. State of Florida

Judge Kahn, Padavano, Hawkes

10-?-2007  PCA

**9.** CASE No.: 5:08 cv 322

USDCt ND

?-?-2008

Thompson v. Windsor

Judge Miles Davis

11-?-2008 Without Prejudice

**10.** CASE No.: 5:09 cv 73

USDCt ND

3-?-2009

Thompson v. Windsor

Judge Elizabeth Timothy

12-?-2010 Summary Judy.

**11.** CASE No.: 11-10220I

USCA 11th Circuit

?-?-2011

Thompson v. Windsor

Judge ?

3-?-2011

**12.** CASE No.: 1D11-5794

First DCA

10-?-2011

Thompson v. State of Florida

Judge ?

12-? 2012  PCA

**13.** CASE No.: 12-8968

U.S.S.Ct.

?-?-2012

Thompson v. Florida

All Nine Justices

10-?-2013 Cert. denied

**14.** CASE No.: 1D14-5417

First DCA

?-? 2014-15

Thompson v. State of Florida

Roberts, Clark, Rowe

?-?-?  PCA

22

Additional Page to p. 22: Section VIII, Prior Litigation (C):

15. Case No.: 1D14-5767          Thompson v. State of Florida
    First DCA                     Judge Benton, Clark, Makar
    ?-? 2014-15                    4-?-2015  PCA

16. Case No.: 14-9921            Thompson v. Florida
    U.S.S.Ct.                      All Nine Justices ?
    5-?-2015                       6-?-2015  Cert. denied

17. Case No.: 4:15 cv 254        Thompson v. Secy. Dept. Corr.
    USDCt. ND                     Judge Gary Jones
    5-?-2015                       10-?-2018  Denied

18. Case No.: 18-10623-H         Thompson v. Secy Dept. Corr.
    USCA 11th Circuit             Judge Stanley Marcus
    ?-?-2018                       10-?-2018  Denied

19. Case No.: 19-5723            Thompson v. Inch
    U.S.S.Ct.                      All Nine Justices ?
    ?-?-2019                       11-?-2019  cert. denied

23.

3.  I understand it is my obligation to timely notify the Clerk's Office if there is any change to my mailing address and that my failure to do so may result in a dismissal of the action.

Date: 3-20-2024  Plaintiff's Signature: _____

Printed Name of Plaintiff: Melvin Bernard Thompson #959252

Correctional Institution: Central Florida Reception Center

Address: 7900 H.C. Kelley Road

Orlando, Florida 32831

**I certify and declare, under penalty of perjury, that this complaint was (*check one*) ☑delivered to prison officials for mailing or ☐ deposited in the prison's mail system for mailing on the 4 day of Apnl, 2024.**

Signature of Incarcerated Plaintiff: _____

## 28 USC. §1746
## VERIFIED COMPLAINT

I Melvin Bernard Thompson, here by Declare, and verify, under the penalty of perjury, pursuant to 28 usc §1746, and the laws of the United States of America that I have read the foregoing Civil Rights Complaint and the facts within are true and correct to the best of my knowledge, on this 20 day of March 2024.

Plaintiff's Signature: _____

#959252

Melvin B. T

Doem A

Central Florida Reception Center

7000 H.C. Kelley Rd

Orlando, Florida 32831



STAMPED FROM A
CORRECTIONAL
INSTITUTION

CHECKED APR 18 2024

STAMPED FROM A
CORRECTIONAL
INSTITUTION

To: Clerk, U.S. District Court
111 N. Adams Street
Tallahassee, Florida 32301-7730